IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HEIDI BORN-SMITH,

                                                OPINION AND ORDER

                Plaintiff,

                                                10-cv-365-bbc

     v.

PORTAGE COUNTY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The question in this case is whether plaintiff Heidi Born-Smith is entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207, and Wisconsin law for her work as the administrative assistant to the county executive for Portage County from 2006 to 2010 . Although there is no dispute that plaintiff worked more than 40 hours a week, defendant Portage County argues in its motion for summary judgment that the FLSA does not apply to her because she was the "personal staff" of an elected official, which is one of the exemptions to the statute. Because I agree with defendant that plaintiff was a personal staff member of the county executive, I am granting defendant's motion as to the plaintiff's FLSA claim. Further, because the parties agree that Wisconsin law has the same scope as the FLSA on this issue, Wis. Admin. Code § DWD 274.08, I must grant defendant's motion as

1

to the state law claim as well.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

In 2005 Portage County created the Office of County Executive. The county board approved a position for an administrative assistant to the county executive under Wis. Stat. § 59.17(3), which says that "[t]he county executive may appoint administrative secretaries using hiring procedures which shall be exempt from county civil service competitive examination procedures and such additional staff assistants as the board provides."

Mark Maslowski was elected the county executive for Portage County in April 2006. He asked the human resources department, "What do we need to do to get [an] administrative assistant here?" After his discussion, Maslowski believed that he was required "to follow the human resources department's normal recruitment process" in hiring an administrative assistant. He did not believe that he could appoint anyone he chose without following this process. (The parties dispute whether anyone in the human resources department told Maslowski that he was required to follow any particular procedure or whether they used their standard procedures because Maslowski asked for assistance.)

After the human resources department posted the job, plaintiff Heidi Born-Smith

2

submitted an application. At some point in the process, the department conducted reference checks and administered tests to the applicants related to typing, word processing and compiling spreadsheets.  (The parties dispute whether Maslowski requested the reference checks and approved the tests.)  The department screened the applications and eliminated some of them before giving the rest to Maslowski for review.  Maslowski chose six or seven candidates to be interviewed by a panel, which included him.  After the interviews, the panel discussed the candidates and then Maslowski made the final decision to offer the position to plaintiff.    Maslowski testified that he "had the final say" and that "I really wanted Heidi, so it was my decision."

The offer letter was prepared by the human resources department and signed by Maslowski.  Included in the letter was a statement that the "position is a non-represented management position with Portage County and therefore considered an exempt status position."  Plaintiff accepted the job offer,

As Maslowski's administrative assistant, plaintiff provided "routine clerical and secretarial support" to Maslowski.  She had "regular" contact with him as his "personal confidential secretary."  She handled a variety of "confidential and private matters." She was under his "direct supervision" and the only other person who worked in his office.  In some situations, plaintiff was authorized to sign for Maslowski.  She attended meetings to take notes for him, answered the telephone for him, drafted letters and press releases for him and

3

served as a "liaison with office visitors, news media and local, state and federal officials." Occasionally, plaintiff filled in for other departments in the county.

Maslowski had the authority to discipline and terminate plaintiff "at any time for any reason." (The parties dispute whether he would need to follow particular procedures in doing so.)

The human resources department told Maslowski that he had to fill out performance evaluations for plaintiff. Under county policy, plaintiff received the same amount of paid vacation time as other nonunion county employees; Maslowski did not have authority to give plaintiff more paid vacation time. (The parties dispute the extent to which Maslowski controlled plaintiff's salary.) Plaintiff was subject to the same employee handbook and employment policies as other county employees; Maslowski did not have authority to change those policies.

Patty Dreier was elected the county executive for Portage County on April 6, 2010. On April 12, plaintiff was notified that Dreier would be selecting a new administrative assistant. Plaintiff's last day of work was April 19, the day before Dreier took office.

OPINION

Under the Fair Labor Standards Act, employees are entitled to overtime pay unless they fall within a statutory exemption. 29 U.S.C. § 207. One of these is for a public

4

employee "who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and . . . who . . . is selected by the holder of . . .an [elected] office to be a member of his personal staff." 29 U.S.C. § 203(e)(2)(C)(ii)(II). The same exemption exists in other federal employment statutes, which leads courts to rely frequently on case law applying statutes other than the one at issue. E.g., Rutland v. Pepper, 404 F.3d 921, 924 n.2 (5th Cir. 2005)("[B]ecause all three statutes contain the identical definitions of 'employee,' courts considering personal staff exemptions to the FLSA or the FMLA may be guided by cases interpreting an analogous exemption to Title VII."); Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 161 (6th Cir. 2004) ("Courts have interpreted the FLSA's 'personal staff' and "policymaking" exemptions consistently with their Title VII counterparts.").

It is undisputed that plaintiff was "not subject to the civil service laws." Compare Halloway v. Milwaukee County, 180 F.3d 820, 828 n.10 (7th Cir. 1999) (finding that coverage of commissioner position by civil service laws precluded exemption under statute). The question is whether plaintiff was "selected" by the county executive "to be a member of his personal staff." Because this is an exception to liability, it must be narrowly construed. Cromer v. Brown, 88 F.3d 1315, 1323 (4th Cir. 1996). Further, defendant has the burden to show that plaintiff falls within the exception. Smith v. City of Jackson, 954 F.2d 296, 298 (5th Cir. 1992).

5

The statute does not define the term "personal staff," so that task has been left to the Department of Labor and the courts on a case-by-case basis. Both the executive and the judicial branch seem to be in general agreement regarding the factors that are relevant to determining whether a particular employee was "personal staff." Who hired her? Who supervised her? How close was the working relationship between the employee and the elected official? Who had the authority to discipline and terminate her? 29 C.F.R. § 553.11; Kelley v. City of Albuquerque, 542 F.3d 802, 808 n.7 (10th Cir. 2008); Teneyuca v. Bexar County, 767 F.2d 148, 151-52 (5th Cir. 1985). These are common sense questions related to the ordinary meaning of the term. Owens v. Rush, 654 F.2d 1370 (10th Cir. 1981). In addition, some courts have used legislative history to confirm the conclusion that these are the relevant questions. Tranello v. Frey, 962 F.2d 244, 249-50 (2d Cir. 1990) ("Congress meant to deny [statutory] protection only to such appointees as would normally work closely with and be accountable to the official who appointed them.").

In many ways, it is hard to imagine a position that fits more comfortably within the meaning of "personal staff" than an administrative assistant. Often, the responsibilities of those employees are devoted primarily to helping their supervisors perform their own duties smoothly and efficiently. The facts show that plaintiff's situation was no different. Her position was created by the county for the purpose of serving the county executive. Under § 59.17(3), the county executive has authority to appoint his or her own administrative

6

assistant. Plaintiff was supervised directly by Masloweski, for whom the vast majority of her work was performed. As the only two people in the office, they necessarily had a close working relationship. Maslowski had authority to discipline or fire her. Finally, when Maslowski left office, the incoming county executive had the authority to replace her and did so.

There seems to be little case law directed to the question whether administrative assistants fall within the meaning of "personal staff." In fact, the only discussion by the Court of Appeals for the Seventh Circuit regarding this exemption is in a case in which the court stated that the exemptions for public employees under federal labor law (the "personal staff" exemption is one of four) may be similar to the exception under the First Amendment for employees who have "confidential" or "policymaking" responsibilities. Americanos v. Carter, 74 F.3d 138, 143-44 (7th Cir. 1996) (concluding that deputy attorney general could not sue attorney general under First Amendment, Title VII or ADEA for discharge motivated by political affiliation). However, the parties do not cite any cases involving similar facts in which the court of appeals has considered whether to apply the statutory exemption or the First Amendment. But see Faughender v. City of North Olmstead, Ohio, 927 F.2d 909 (6th Cir. 1991) (concluding that mayor's secretary could not sue under First Amendment because hers "is clearly the type of position that involves access to confidential and political material, and political loyalty, whether partisan or personal, is an essential attribute of the job");

7

Soderstrum v. Town of Grand Isle, 925 F.2d 135, 140 (5th Cir. 1991) (concluding that secretary to police chief was not entitled to First Amendment protection because she "served in a position of confidence requiring complete loyalty to the police chief").

In other circuits, courts have found that the "personal staff" exemption applied to a deputy clerk of court, Rutland, 404 F.3d 921, a magistrate judge, Birch, 392 F.3d at 158-59, an assistant state attorney general, EEOC v. Reno, 758 F.2d 581, 584 (11th Cir. 1985), a staff attorney, Laurie v. Alabama Court of Criminal Appeals, 88 F. Supp. 2d 1334, 1348 (M.D. Ala. 2000), and a law clerk. Gupta v. First Judicial Dist. of Pa., — F. Supp, 2d —, 2010 WL 5341849, *7-8  (E.D. Pa. 2010).  They have found that assistant city attorneys were not personal staff members of the mayor, Kelley, 542 F.3d at 808 n.7, and that a deputy assessor was not a personal staff member of the city assessor, Starrett v. Wadley, 876 F.2d 808 (10th Cir. 1989).  Courts have come to different conclusions regarding whether deputy sheriffs are the personal staff members of the sheriff.  Compare Brewster v. Barnes, 788 F.2d 985, 990 (4th Cir. 1986) (not exempt) with Nichols v. Hurley, 921 F.2d 1101, 1113-14 (10th Cir. 1990) (exempt).

The most closely analogous case cited by the parties is Bland v. New York, 263 F. Supp. 2d 526, 543-44 (E.D.N.Y. 2003), in which the court concluded that a judge's secretary was covered by the "personal staff" exemption of Title VII for essentially the same reasons that I discussed above.  See also Estate of Pascal v. Benson County, 1995 WL 394374, *1

(D.N.D. 1995) (concluding that sheriff's "clerical staff" were exempt). Plaintiff does not challenge the reasoning or conclusion of Bland (or cite any cases that support her position for that matter), but she says that Bland is distinguishable because in that case the Office of Court Administration was not involved in the hiring process and the judge had greater control over his secretary.

Plaintiff's distinctions are not persuasive. With respect to the hiring process, plaintiff seems to acknowledge that under Wisconsin law, Maslowski had complete authority over the decision. In fact, in her brief, she points out that Maslowski's successor skipped over much of the process that Maslowski employed in choosing plaintiff and did not involve the human resources department to the same extent that Maslowski did. Plaintiff's argument seems to be that Maslowski believed incorrectly that he was required to follow a particular process and accept input from the human resources department, but it is not clear that Maslowski's state of mind is a relevant factor. Nichols, 921 F.2d at 1110 (stating that "whether the elected official has plenary powers of appointment and removal . . . can be measured rather objectively"). In any event, it is undisputed that Maslowski made the final decision regarding plaintiff's hire. Although the human resources department was involved in the process, this was primarily to *assist* Maslowski in making his choice, not to control it. With respect to the authority Maslowski exercised over her, plaintiff identifies no relevant differences between this case and Bland. Plaintiff's vacation and benefits may have been set by county

9

policy and state law, but Maslowski supervised her day-to-day activities and had authority to discipline and even terminate her. In Bland, the court explained why administrative details are not dispositive. If they were,

> then any elected official's personal staff member, chosen by that official, serving at his pleasure, whose salary and employment nonetheless ultimately stemmed from a governmental authority could fall outside the exemption regardless of the intimacy of the working relationship. This would effectively eradicate this entire category of exemption, since few elected officials' personal staff members are wholly administered and paid for personally. This cannot be correct. Rather, this approach to the problem is better viewed as another way of looking at the personal nature of the appointment and the intimate and sensitive nature of the job. In a case like the present one, where it is clear that there is an exclusive working relationship and sole personal accountability to the elected official, the issue should be of less importance.

Bland, 263 F. Supp. 2d at 543-44. I find this reasoning persuasive and applicable to plaintiff. See also Gupta, 2010 WL 5341849, at *6-7 (law clerk's "accountability to Judge Butchart for her substantive work was not reduced by Defendant's handling of ministerial activities, such as signing Plaintiff's paychecks, issuing her employee identification card, and disseminating the human resources policies").

Plaintiff points to other factors that she believes support her position, but their probative value is limited. First, she says that she performed work in other departments, but she points to no evidence that this was a common occurrence or that she did so without Maslowski's permission. It is undisputed that she performed the vast majority of her work for Maslowski and that her official duties were limited to helping him. It is difficult to see

10

why she was any less Maslowski's "personal staff" simply because her boss was willing to let her help out other departments when they needed it. Nichols, 921 F.2d at 1113 (plaintiff's interactions with other departments not controlling because "the record does not show that any of these people or organizations had any control or influence over plaintiffs' duties, powers, performance, or actual service").

Second, she says that when she was terminated, it was not Maslowski who informed her. However, this fact carries no weight because she was terminated as a result of Maslowski's leaving office and the decision of the incoming county executive to hire her own assistant. Under plaintiff's logic, the President's cabinet members would not be members of his personal staff unless he informed them himself that they must leave at the end of his term. It is irrelevant who told plaintiff that she was terminated; the important fact is that her employment was contingent on Maslowski's being in office.

Third, she says that she did not advise Maslowski on matters of policy, but she is overstating the importance of this fact. The FLSA includes other exemptions for an employee who is "an immediate adviser" to an elected official or "serve[s] on a policymaking level." 29 U.S.C. § 203(e)(2)(C)(ii)(II)-(III). Thus, reading the "personal staff" exemption to include the same limitation would render these other exemptions superfluous. Corley v. United States, 129 S. Ct. 1558, 1566-67 (2009) ("[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so

11

that no part will be inoperative or superfluous, void or insignificant.") (internal quotations and alterations omitted). See also Nichols, 921 F.2d at 1113-14 (policymaking and advice "relate to exceptions other than that for personal staff"); Bland, 263 F. Supp. 2d at 542 ("If, as plaintiff urges, some kind of active role in the policy making functions of the office were necessary to render a staff member exempt under the statute, then the 'policy making' and 'personal staff' exemptions would be collapsed into a single category, rendering the separate 'personal staff' exemption surplusage.") .

Further, although some courts have considered the employee's "rank within the organization's command structure," this is generally in the context of determining whether the employee and elected official were separated in the chain of command by other supervisors. Montgomery v. Brookshire, 34 F.3d 291, 296 (5th Cir. 1994). When, as in this case, plaintiff is part of a small office and the elected official is her direct supervisor, her rank is less important. Gunaca v. State of Texas, 65 F.3d 467, 472-73 (5th Cir. 1995) ("In a small office, an employee's placement in the chain of command is less significant to a consideration of the nature and circumstances of the employment relationship between employee and employer.").

Finally, plaintiff says that she "did not represent Maslowski in the eyes of the public because she had no authority to and did not perform the functions of the County Executive." Plt.'s Br., dkt. #19, at 12. She cites cases in which courts found that employees such as

12

magistrate judges, assistant district attorneys and deputy sheriffs fell within the "personal staff" exemption while noting that they performed work similar to that of the elected official and did so on that official's behalf. Birch, 392 F.3d 151; Nichols; 921 F.2d 1101; Teneyuca, 767 F.2d 148.

Although many courts have considered whether an employee "represents the elected official in the eyes of the public," plaintiff's understanding of this factor is too narrow. Courts have not explained the reasons why this factor is relevant, but presumably it is that the actions of personal staff members are more likely to be seen as extensions of the elected official's own actions. Performing work similar to that of the official may be one way this occurs, but it is not the only way. As the administrative assistant, plaintiff was the voice that members of the public heard when they called the office and the first face they saw when they visited. Any actions that she took in the course of her job would be viewed by observers as taken on behalf of Maslowski. Seen in this light, plaintiff is no less the "representative" of the official than is an assistant district attorney the representative of the district attorney. Rutland, 404 F.3d at 923-24 (deputy clerk "represented [clerk of court] to members of the public contacting the Chancery's office"); Gunaca, 65 F.3d at 471 (nonlawyers may represent district attorney if their job "necessarily involves interaction with the public"); Gupta, 2010 WL 5341849, at *7 -8 (law clerk served as representative to judge by "answer[ing] phone calls . . . and . . . assist[ing] in the courtroom").

13

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Portage County, dkt. #9, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 26th day of May, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge